IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

―――――――――――――――――――X
                                    :
MAUREEN M. BRITELL,                 :
                                    :
        Plaintiff,                  :
                                    :
    -versus-                        :    Civil Action No. 99CV11253NG
                                    :
UNITED STATES OF AMERICA            :
                                    :
        Defendant.                  :
                                    :
―――――――――――――――――――X

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT: MORALITY AS A LEGITIMATE STATE INTEREST**

Defendant's asserted interest in morality is based entirely upon whether Congress could have assigned value to an anencephalic fetus's "potential, albeit ephemeral, life." Response to Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment: Morality as a Legitimate State Interest ("Def.'s Response") at 9. This morality interest is indistinguishable from the state interest in potential life, which was already presented by Defendant and rejected by this Court. *See Britell v. United States*, No. CIV-11253-NG, 2001 WL 539469, at *11 (D. Mass., May 16, 2001) ("Clearly, therefore, CHAMPUS cannot defend its position regarding funding for termination of an anencephalic pregnancy simply by pointing to the state's interest in preserving 'potential life.'"). Even if this Court considers Defendant's asserted state interest in morality to be somehow different from an interest in potential life, that interest should be rejected for the reasons stated below and in Plaintiff's Supplemental

DOCKETED  (52)

Memorandum in Support of Plaintiff's Motion for Summary Judgment: Morality as a Legitimate State Interest.

I. **ARGUMENT**

    A. **Congress's Articulated Goals and Purpose of the CHAMPUS Program is Relevant to Determine the Appropriate Governmental Interest.**

Defendant criticizes Plaintiff for looking first to the legislative history and the purpose of the CHAMPUS program to determine whether morality was the impetus behind CHAMPUS's restriction on funding terminations of anencephalic pregnancies. Def.'s Response at 5-7. Plaintiff has not claimed that looking to legislative history ends the inquiry when ascertaining the appropriate state interests, but merely asserts that this is one initial factor to be considered by the Court. For example, in *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973), the Court looked to whether the stated purpose of the food stamp program justified the classification at issue in that case. *See also Boivin v. Black*, 225 F.3d 36, 44 n.6 (1st Cir. 2000) (in context of rationality review, the court examined legislative history to determine appropriate state interests) (cited in Def.'s Response at 7). Thus, the legislative history and purpose of the CHAMPUS program is a starting point to determine the state interest justifying the government's refusal to cover Plaintiffs abortion, and Defendant does not dispute that neither of these guides indicates consideration by Congress of any state interest other than potential life.

    B. **Courts Have Struck Down Irrational Classifications, Even Absent an Invidious Motive.**

Contrary to Defendant's claim, the success of an equal protection challenges does not turn on whether a class is invidiously singled out for differential treatment. There are many cases in which the Court has stricken an irrational statute, even though there was no evidence of a legislature's motivation to harm a politically unpopular group. For example, in *Hooper v. Bernalillo County Assessor*, 472 U.S. 612 (1985), the Court struck down a New Mexico statute

that granted a tax exemption to Vietnam veterans residing in the state prior to an arbitrary date. The Court found that the State's purported objectives bore no rational relationship to the classification at issue. *Id.* at 620. There was no suggestion that the New Mexico legislature was motivated by any invidious desire to harm Vietnam veterans settling in New Mexico after the arbitrary date. In *Zobel v. Williams*, 457 U.S. 55 (1982), the Court held that Alaskan dividend distribution plan was irrational under the equal protection clause because it favored established Alaskan residents over new residents and the Court did not suggest there was or needed to be an invidious motive for the plan. Similarly, in *O'Brien v. Skinner*, 414 U.S. 524 (1974), the Court struck down a New York statute which allowed prisoners detained in their county of residence the ability to vote by absentee ballot while denying prisoners incarcerated outside their county of residence the right to do the same. The Court in *O'Brien* also did not suggest there was or needed to be an invidious motive for the classification. Therefore, contrary to Defendant's argument, equal protection challenges subject to rational basis review have succeeded absent any showing of invidious intent of a legislature.

### C. A Bare Assertion of Morality Cannot be the Justification for Refusing to Fund Plaintiff's Abortion.

This case presents an issue far different from any cases relied upon by Defendant to support its assertion that morality is a legitimate basis for refusing to fund Plaintiff's anencephalic pregnancy. Plaintiff's abortion was necessary to preserve her health, and her right to access abortion is constitutionally protected.[1] Restrictions on gambling, prostitution, public nudity, pornography, and fornication, *see* Def.'s Response at 10, may be justified by a state interest in morality because such restrictions further public welfare and do not touch on

---

[1] The fact that Plaintiff understandably grieved her doomed pregnancy in her particular circumstances is irrelevant to Defendant's morality interest claim.

3

constitutionally protected rights. Nothing cited by Defendant suggests that Congress can legislate on the basis of a bare morality interest when it impacts behavior involving the exercise of a constitutional right, or when the restriction poses a risk to an individual's health.[2] In striking down a prohibition on distribution of contraceptives to unmarried persons as irrational, the First Circuit has held that a bare assertion of morality is insufficient if it does not further public welfare: "[s]uch a view of morality is not only the very mirror image of sensible legislation; we consider that it conflicts with fundamental human rights. In the absence of demonstrated harm, we hold that it is beyond the competency of the state." *Baird v. Eisenstadt*, 429 F.2d 1398, 1402 (1st Cir. 1970), *aff'd on other grounds*, 405 U.S. 438 (1972). Thus, the Defendant cannot successfully argue that the refusal to pay for Plaintiff's abortion is justified by a state interest in morality both because the CHAMPUS restriction affects constitutionally protected behavior, and because Defendant has not demonstrated that the restriction prevents harm to the public welfare.

Defendant's "slippery slope" argument is also unpersuasive because the termination of an anencephalic pregnancy is completely different from the cases cited by Defendants involving physician-assisted suicide or removal of life-support from anencephalic infants.[3] Def.'s Response at 16-19. Those cases involve preventing tangible harm to human life, not fetal life. If Defendant's slippery slope argument were correct, it would provide the basis for overturning *Roe v. Wade*. Furthermore, the termination of Plaintiff's anencephalic fetus is unlike other fetal

---

[2] In addition, Defendant has not refuted any cases cited by Plaintiff in her supplemental memorandum that rejected morality as a state interest in the context of abortion restrictions and abortion funding. *See* Pl.'s Supplemental Mem. in Supp. of Pl.'s Mot. for Summ. J.: Morality as a Legitimate State Interest at 4-5.

[3] Furthermore, in *In the Matter of Baby "K"*, 16 F.3d 590 (4th Cir. 1994), upon which Defendant relies, Def.'s Response at 17, the court was not presented with an equal protection argument. Rather, the court's analysis was limited to a statutory analysis of the Emergency Medical Treatment and Active Labor Act.

abnormalities described by Defendant, Def.'s Response at 17, because there was not only a very low probability that Plaintiff's fetus would be born alive, but even if it were, it is an absolute certainty that it would have been incapable of survival since it lacked a brain (other than the stem).[4] Thus, Defendant's slippery slope argument cannot be the justification for refusing to fund the termination of Plaintiff's anencephalic pregnancy.

## II.  Conclusion

For all of the foregoing reasons, this Court should grant Plaintiff's motion for summary judgment because no legitimate state interest is served by refusing to cover the termination of Plaintiff's anencephalic pregnancy.

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/hand.

Date: 7/17/01

Respectfully Submitted,

John H. Henn, BBO #230250
Foley, Hoag & Eliot LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 832-1000

---

[4] Even if Plaintiff had carried to term and her fetus had been born alive, she could have sought to remove life support and obtain a "do not resuscitate" order. *See Care and Protection of Beth*, 587 N.E.2d 1377 (Mass. 1992) (court upheld a "do not resuscitate order" of a comatose child because the court substituted its judgment for the child's and determined that the child would have chosen to decline resuscitative medical treatment in the event of respiratory or cardiac arrest). Thus, Plaintiff would in all likelihood have been able to decline to prolong even the ephemeral "life" of her anencephalic fetus, if indeed it was born alive. Under these circumstances, the governmental "interest" in compelling her to continue a doomed pregnancy is hardly a "moral" interest -- it is, instead, a cruel and irrational interest. *See Karlin v. Foust*, 188 F.2d 446, 489 n.16 (7th Cir. 1999).

                              Of counsel:

                              Simon Heller
                              Janet Benshoof
                              Brigitte Amiri
                              The Center for Reproductive Law & Policy
                              120 Wall Street, 14th floor
                              New York, New York 10005
                              (917) 637-3600

Dated: July 17, 2001.